IN FEDERAL DISTRICT COURT FOR THE

WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARLENE ALOMÍA an individual,<br><br>          Plaintiff,<br><br>          vs.<br><br>STEPHEN CRAIG SHAFFER, an individual,<br><br>          Defendant. | No. 3:22-cv-9<br><br>**COMPLAINT** |

## I. INTRODUCTION

1. This is a lawsuit for financial support under the United States Citizenship and Immigration Services ("USCIS") Form I-864, Affidavit of Support ("Affidavit of Support").

2. The Affidavit of Support was created by Congress in 1996 to ensure that family-sponsored immigrants are ensured a basic level of financial wellbeing, sufficient to meet the most basic needs of life.

3. In mandating the Affidavit of Support, Congress required visa petitioners, rather than the American people, serve as a financial safety net to new immigrants.

4. Once executed, the Affidavit of Support is a legally binding contract between a sponsor and the United States government, of which the intending immigrant is a third-party beneficiary.

5. Marlene Alomía is a beneficiary of an Affidavit of Support executed by Stephen Craig Shaffer, her former husband.

6. Mr. Shaffer has failed to provide Ms. Alomía with the basic level of income support promised in the Affidavit of Support.

7. This lawsuit seeks to compel Mr. Shaffer to fulfill the support duty mandated by the Affidavit of Support and associated federal law.

## II. JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as this action arises under the federal Immigration and Nationality Act per 8 U.S.C. § 1183a(e)(I).

9. This Court has personal jurisdiction because Mr. Shaffer resides in this District.

10. Additionally, this Court has personal jurisdiction over Mr. Shaffer as, by signing the Affidavit of Support, he submitted to the jurisdiction of any

court with subject matter jurisdiction over Ms. Alomía's claims. 8 U.S.C. § 1183a(a)(1)(C).

11. Venue is proper in this District as a substantial part of the events or omissions giving rise to Ms. Alomía's claims occurred in this District, to wit, Mr. Shaffer's failure to provide financial support. 28 U.S.C. § 1391(b)(2).

## III. PLAINTIFF

9. Ms. Alomía is a citizen of Peru.

10. Ms. Alomía resides in Altoona, Pennsylvania.

## IV. DEFENDANT

11. Mr. Shaffer is a citizen of the United States of America.

12. As further alleged below, Mr. Shaffer served as Ms. Alomía's immigration sponsor by executing an Affidavit of Support, thereby contractually promising to provide a specified level of income to Ms. Alomía.

13. Mr. Shaffer resides in Osterburg, Pennsylvania.

## V. FACTUAL ALLEGATIONS

**Background concerning the Affidavit of Support.**

14. Since 1882 federal law has excluded the immigration of individuals considered "likely to become a public charge." Act of Aug. 3, 1882, 22 Stat. 214.

15. The current immigration statute, in effect at all times material to the facts alleged herein, forbids the entry of immigrants determined likely to become a "public charge." 8 U.S.C. § 1182(a)(4).

16. The Affidavit of Support is required for an intending family-based immigrant visa applicant to overcome public charge inadmissibility. 8 U.S.C. § 1182(a)(4)(C).

17. The only family-based intending immigrants who are exempt from submitting an Affidavit of Support are those classes listed at 8 C.F.R. § 213a.2(a)(2)(ii), to wit: (A) self-petitioners under the Violence Against Women Act; (B) grandfathered immigrants with petitions pending prior to December 19, 1997; (C) those who have worked and/or may be credited with 40 qualifying quarters of coverage as defined under title II of the Social Security Act; (D) a child admitted under 8 U.S.C. § 1181(a) and 8 C.F.R. § 211.1(b)(1); and (E) a child who will automatically acquire citizenship under 8 U.S.C. § 1431.

18. Prior to October 15, 2019, intending immigrants who qualified for an exemption under 8 C.F.R. § 213a.2(a)(2)(ii) were required to submit a Form I-864W, Request for Exemption for Intending Immigrant's Affidavit of Support.

19. After October 15, 2019, the exemptions under 8 C.F.R. § 213a.2(a)(2)(ii) continue to apply, but USCIS no longer requires the Form I-864W and collects related information through other, updated forms.

20. Creation of the Affidavit of Support was mandated by Congress to ensure that certain classes of immigrants to the United States would be guaranteed a level of financial support necessary to meet basic human needs. *Cf. Liu v. Mund*, 686 F.3d 418 (7th Cir. 2012), *as amended* (July 27, 2012).

21. The Affidavit of Support has been mandatory in all U.S. marriage-based immigrant visa and adjustment of status cases at all times material to the case at bar.

22. The Affidavit of Support is a legally binding contract between the sponsor and the United States Government. 8 U.S.C. § 1188a(a)(1)(B).

23. By signing the Affidavit of Support, the sponsor agrees to provide the intending immigrant with any support necessary to maintain her at an income that is at least 125 percent of the Federal Poverty Guidelines ("FPG" or "poverty line") for her household size. 8 U.S.C. § 1183a(a)(1)(A).

24. In any given year for which a sponsored immigrant is entitled to support under the Affidavit of Support, she is entitled to support based the FPG in effect for that year as to U.S. state of residency.

25. The Affidavit of Support obligation may be enforced by the immigrant beneficiary, who is a third-party beneficiary thereof. 8 U.S.C. § 1183a(a)(1)(B); 8 C.F.R. § 213a.2(d).

26. A sponsored immigrant is not required to make any demand for payment from a sponsor prior to commencing a lawsuit to enforce the sponsorship obligation under the Affidavit of Support. 8 C.F.R. § 213a.4(a)(2).

27. By signing the Affidavit of Support, the sponsor agrees to submit to the personal jurisdiction of any federal or state court that has subject matter jurisdiction over a lawsuit against the sponsor to enforce obligations under the Affidavit of Support. 8 U.S.C. § 1183a(a)(1)(C); Exhibit 1, p. 9.

28. By signing the Affidavit of Support, the sponsor certifies under penalty of perjury that the sponsor has read and understands each part of the obligations described in the Affidavit of Support and agrees freely and without any mental reservation or purpose of evasion to accept ach of those obligations in order to make it possible for the immigrant(s) listed in the Affidavit of Support to become lawful permanent residents of the United States. Exhibit 1, p. 9.

29. The Affidavit of Support sponsor also agrees to notify the Government of any change in the sponsor's address within 30 days of the change by filing a Form I-865. *See* 8 U.S.C. § 1183a(d); Exhibit 1, p. 8.

30. A sponsor's duties under the Affidavit of Support commence when the sponsored immigrant becomes a lawful permanent resident ("Resident") based on the Affidavit of Support. Exhibit 1, p. 8.

31. An Affidavit of Support sponsor must continue to perform under the contract until the occurrence of one of five events (collectively "the Terminating Events") set forth in the contract.

32. The sponsor's obligation under the Affidavit of Support conclude once the sponsored immigrant becomes a U.S. citizen (the "First Terminating Event"). 8 C.F.R. § 213a.2(e)(2)(i)(A); Exhibit 1, p. 8.

33. The sponsor's obligation under the Affidavit of Support concludes once the sponsored immigrant has worked or can receive credit for 40 quarters of work under the Social Security Act (the "Second Terminating Event"). 8 U.S.C. § 1183a(a)(3)(A); 8 C.F.R. § 213a.2(e)(2)(i)(B); Exhibit 1, p. 8.

34. For purpose of the Second Terminating Event, a sponsored immigrant's quarters of work are as shown on her current U.S. Social Security Administration Social Security Earnings Statement.

35. The sponsor's obligation under the Affidavit of Support concludes once the sponsored immigrant is no longer a permanent resident and has departed the U.S. (the "Third Terminating Event"). 8 C.F.R. § 213a.2(e)(2)(i)(C); Exhibit 1, p. 8.

36. The sponsor's obligation under the Affidavit of Support concludes once the sponsored immigrant is subject to an order of removal but applies for and obtains in removal proceedings a new grant of adjustment of status based on a new affidavit of support, if required (the "Fourth Terminating Event"). 8 C.F.R. § 213a.2(e)(2)(i)(D); Exhibit 1, p. 8.

37. The sponsor's obligation under the Affidavit of Support concludes once the sponsored immigrant dies (the "Fifth Terminating Event"). 8 C.F.R. § 213a.2(e)(2)(i)(E); Exhibit 1, p. 8.

38. In order to serve as a sole Affidavit of Support sponsor, an individual must demonstrate income at our above 125% of the poverty line for the individual's household size. 8 U.S.C. § 1183a(f)(1)(E).

39. If the income of the visa petitioner is below 125% of the poverty line, the individual may demonstrate that he or she owns assets equal to at least five times the income shortfall (or three times in the case of marriage-based case). Such assets must be convertible to U.S. cash within 12 months. 8 U.S.C. § 1183a(f)(6)(A)(ii).

40. An immigration petitioner who lacks income and assets sufficient to serve as a sole Affidavit of Support sponsor may obtain the assistance of an additional individual who agrees to serve as a "joint sponsor" by executing and filing an additional Affidavit of Support. 8 U.S.C. § 1183a(f)(5)(A).

41. An Affidavit of Support is considered executed once it is signed and submitted to either USCIS or the Department of State in support of an intending immigrant's application. 8 C.F.R. § 213a.2(a)(B)(ii).

42. Once executed, the Affidavit of Support becomes a binding contract between the sponsor and the United States government for the benefit of the sponsored immigrant. 8 C.F.R. § 213a.2(d).

43. A sponsor's support obligation under the Affidavit of Support commences when an intending immigrant obtains Resident status on the basis of an application that included the sponsor's Affidavit of Support. 8 C.F.R. § 213a.2(e)(1).

**Ms. Alomía's immigration to the United States.**

44. Mr. Shaffer met Ms. Alomía via a mutual friend in 2007.

45. In October 2009, Mr. Shaffer traveled to Peru and met Ms. Alomía in person for the first time. During this trip, Ms. Alomía became pregnant by Mr. Shaffer.

46. In the summer of 2010, Ms. Alomía gave birth to Mr. Shaffer's daughter, N.L.S.

47. The parties' registered the birth of N.L.S. with the United States Consulate in Peru by filing a Consular Report of Birth Abroad.

48. N.L.S. was a U.S. citizen by operation of law, and for that reason was not required to obtain a U.S. visa in order to travel to this nation.

49. On September 6, 2011, Mr. Shaffer signed a USCIS Form I-129F, Petition For Alien Fianc(é)e (the "Visa Petition").

50. A true and correct copy of the Visa Petition is attached as Exhibit 2.

51. The Visa Petition listed Ms. Alomía as Mr. Shaffer's "alien" fiancée.

52. Mr. Shaffer caused the Visa Petition to be filed with USCIS.

53. On January 13, 2012, USCIS approved Mr. Shaffer's Visa Petition.

54. Ms. Alomía thereafter applied for a K-1 category visa as Mr. Shaffer's fiancée.

55. On March 20, 2012, Mr. Shaffer signed a USCIS Form I-134, Affidavit of Support, which he caused to be filed in support of Ms. Alomía's fiancée visa application.

56. A copy of the Form I-134, along with documents filed in support thereof, as contained in Ms. Alomía's A-file is attached as Exhibit 3.

57. In proffering the Form I-134, Mr. Shaffer represented to the U.S. government that, "I intend to provide room, board, clothing, money and all other needs for my fiance [sic.] and daughter indefinitely." Exhibit 3, p. 2.

58. Mr. Shaffer certified this statement to be true and correct "under penalty of perjury under United States law." Exhibit 3, p. 2.

59. Ms. Alomía's fiancée visa application was approved on April 20, 2012.

60. A copy of Ms. Alomía's fiancée visa foil and associated U.S. Customs and Border Protection Form I-94 Departure Record, as contained in Ms. Alomía's A-file is attached as Exhibit 4.

61. On May 3, 2012, Ms. Alomía entered the United States on her fiancée visa.

62. On May 25, 2012, Ms. Alomía and Mr. Shaffer were married in Citrus Springs, Florida.

63. On June 29, 2012, Ms. Alomía signed a Form I-485, Application to Register Permanent Residence of Adjustment Status (the "Residency Application").
64. A copy of Ms. Alomía's Residency Application as contained in Ms. Alomía's A-file is attached as Exhibit 5.
65. The parties caused Ms. Alomía's Residency Application to be filed with USCIS.
66. Under the "Application Type," Ms. Alomía indicated that the Residency Application was based on her entry to the U.S. as Mr. Shaffer's fiancée. Exhibit 5, p. 1.
67. Ms. Alomía's Residency Application was based on Defendant's Visa Petition as but for Mr. Shaffer's petition, Ms. Alomía would not have qualified to file the Residency Application based on the Application Type listed on the first page.
68. Ms. Alomía qualified for none of Affidavit of Support exemptions specified at 8 C.F.R. § 213a.2(a)(2)(ii).
69. On June 29, 2012, Mr. Shaffer signed an Affidavit of Support (the "Affidavit of Support").
70. A copy of the Affidavit of Support, along with documents filed in support thereof, as contained in Ms. Alomía's A-file is attached as Exhibit 1.
71. The Affidavit of Support listed Ms. Alomía as the intending immigrant beneficiary. Exhibit 1, p. 1.

72. Under the bold-font heading in Part 8 of the form, **"What Does Signing the Form I-864 Require Me to do"**, the Affidavit of Support provides, "In an intending immigrant becomes a permanent resident in the United States based on a Form I-864 that you have signed, then, until your obligations under the Form I-864 terminate you must: - Provide the intending immigrant any support necessary to maintain him or her at an income that is at least 125 percent of the Federal Poverty Guidelines for his or her household size..." Exhibit 1, p. 6.

73. Under the bold font heading in Part 8 of the form, **"What If I Do Not Fulfill My Obligations"**, the Affidavit of Support provides, "If you do not provide sufficient support to the person who becomes a permanent resident based on the Form I-864 that you signed, that person may sue you for this support." Exhibit 1, p. 6.

74. By signing the Affidavit of Support, Mr. Shaffer certified under penalty of perjury of the laws of the United States that he knew the contents of the Affidavit of Support. Exhibit 1, p. 7.

75. By signing the Affidavit of Support, Mr. Shaffer certified under penalty of perjury of the laws of the United States that he had read and that he understood each of the obligations set forth in Part 8 of the form and that he agreed, freely and without any mental reservation or purpose of evasion, t accept each of those obligations. Exhibit 1, p. 6.

76. By signing the Affidavit of Support, Mr. Shaffer certified under penalty of perjury of the laws of the United States that he agreed to submit to the personal jurisdiction of any Federal or State court that has subject matter jurisdiction of a lawsuit against him to enforce his obligations under the Affidavit of Support. Exhibit 1, p. 7.

77. Mr. Shaffer caused the Affidavit of Support to be filed with USCIS in support of Ms. Alomía's Residency Application.

78. Once Mr. Shaffer's Affidavit of Support was filed with USCIS it was executed. 8 C.F.R. § 213a.2(a)(B)(ii).

79. In support of the Affidavit of Support, Mr. Shaffer filed proof of income in the form of documentation of federal income tax filings with the Internal Revenue Service. Exhibit 1, pp. 9-10.

80. On October 17, 2012, USCIS approved Ms. Alomía's Residency Application.

81. USCIS granted status to Ms. Alomía as a conditional lawful permanent resident on October 17, 2012.

82. USCIS issued Ms. Alomía a Form I-551 residency card as a category CF1 immigrant, to wit, one who had adjusted status to conditional lawful permanent resident on the basis of a fianc(é)e visa petition filed by a U.S. citizen.

83. Exhibit 6 is a true copy of Ms. Alomía's original Permanent Resident card.

**Mr. Shaffer's breach of contract.**

84. Mr. Shaffer's duties under the Affidavit of Support commenced on October 17, 2012.

85. Ms. Alomía's Resident status was based on a residency application that included the Affidavit of Support executed by Mr. Shaffer.

86. Because Mr. Shaffer's Affidavit of Support was executed it is an enforceable contract. 8 C.F.R. § 213a.2(d).

87. With respect to Defendant's sponsorship obligation, Ms. Alomía's "income" means Ms. Alomía's total income subject to U.S. federal income tax. 8 C.F.R. § 213a.1.

88. Ms. Alomía ceased residing with Mr. Schaffer in October 2015

89. Exhibit 7 is a copy of Ms. Alomía's Social Security statement as issued January 12, 2022.

90. Ms. Alomía's Social Security statement shows her income, for purposes of damages calculation under the Affidavit of Support, for all years covered b the statement.

91. In 2017 125% of the poverty line amounted to $15,075 per annum.

92. In 2017, Ms. Alomía's income was $4,665.

93. In 2017, Mr. Shaffer provided $0 in support to Ms. Alomía for purpose of his obligation under the Affidavit of Support.

94. In 2017, Ms. Alomía suffered $10,410 in direct damages due to Mr. Shaffer's breach of the Affidavit of Support.

95. In 2018 125% of the poverty line amounted to $15,175 per annum.
96. In 2018, Ms. Alomía's income was $10,411.
97. In 2018, Mr. Shaffer provided $0 in support to Ms. Alomía for purpose of his obligation under the Affidavit of Support.
98. In 2018, Ms. Alomía suffered $4,764 in direct damages due to Mr. Shaffer's breach of the Affidavit of Support.
99. In 2019 125% of the poverty line amounted to $15,612 per annum.
100. In 2019, Ms. Alomía's income was $0.
101. In 2019, Mr. Shaffer provided $0 in support to Ms. Alomía for purpose of his obligation under the Affidavit of Support.
102. In 2019, Ms. Alomía suffered $15,612 in direct damages due to Mr. Shaffer's breach of the Affidavit of Support.
103. In 2020 125% of the poverty line amounted to $15,950 per annum.
104. In 2020, Ms. Alomía's income was $0.
105. In 2020, Mr. Shaffer provided $0 in support to Ms. Alomía for purpose of his obligation under the Affidavit of Support.
106. In 2020, Ms. Alomía suffered $15,950 in direct damages due to Mr. Shaffer's breach of the Affidavit of Support.
107. In 2021 125% of the poverty line amounts to $16,100 per annum.
108. In 2021, Ms. Alomía's income was $0.
109. In 2021, Mr. Shaffer provided $0 in support to Ms. Alomía for purpose of his obligation under the Affidavit of Support.

110. In 2021, Mr. Shaffer provided $0 in support to Ms. Alomía for purpose of his obligation under the Affidavit of Support.

111. In 2021, assuming Ms. Alomía suffered 16,100 in direct damages due to Mr. Shaffer's breach of the Affidavit of Support.

112. In 2022, the operative poverty guidelines have yet to be released.

113. In 2022, Ms. Alomía remains unemployed.

114. In 2022, Mr. Alomía has suffered direct damages in an amount to be determined.

**Facts concerning Terminating Events.**

115. No event has occurred that would constitute a Terminating Event under the Affidavit of Support.

116. Divorce is not a Terminating Event for Mr. Shaffer's obligations under the Affidavit of Support.

117. The First Terminating Event has not occurred because Ms. Alomía has not become a U.S. citizen.

118. The Second Terminating Event has not occurred because Ms. Alomía has neither worked nor can receive credit for 40 quarters of work under the Social Security Act.

119. The Third Terminating Event has not occurred because Ms. Alomía has not both lost status as a permanent resident and departed from the U.S.

120. The Forth Terminating Event has not occurred because Ms. Alomía is not both subject to an order of removal and has also applied for and obtained

in removal proceedings a new grant of adjustment of status based on a new affidavit of support (if required).

121. The Fifth Terminating Event has not occurred because Ms. Alomía is alive.

122. Mr. Shaffer's duties under the Affidavit of Support remain in effect.

## VI. CLAIMS FOR RELIEF

**1 – Breach of contract.**

123. Plaintiff realleges and incorporates all paragraphs above as though fully stated herein.

124. By signing the Affidavit of Support and causing it to be filed in support of Ms. Alomía's residency application, Mr. Shaffer executed an Affidavit of Support.

125. Once executed, the Affidavit of Support became a binding contract between Mr. Shaffer and the United States Government.

126. Ms. Alomía is a third-party beneficiary of the Affidavit of Support.

127. Ms. Alomía has standing as third-party to enforce the financial support rights under the Affidavit of Support.

128. Under the express terms of the Affidavit of Support, Mr. Shaffer agreed to provide Ms. Alomía with any support necessary to maintain Ms. Alomía's income at a level that is at least 125 percent of the Federal Poverty Guidelines for Ms. Alomía's household size.

129. Mr. Shaffer's responsibility to provide income support commenced on October 17, 2012 when Ms. Alomía became a Resident of the United States.

130. All conditions precedent to Mr. Shaffer's duty to perform on the Affidavit of Support were fulfilled as of October 17, 2018.

131. Mr. Shaffer has breached the Affidavit of Support by failing to provide income support to Ms. Alomía.

132. As a result of Mr. Shaffer's breach, Ms. Alomía has suffered damages in an amount to be determined at trial.

## VIII. REQUEST FOR RELIEF

Plaintiff requests the following relief from the Court:

A. Entry of judgment against Mr. Shaffer and in favor of Ms. Alomía each and every cause of action asserted herein;

B. An award of actual damages for January 1, 2017 through December 31, 2021 in the amount of $62,738;

C. An award of actual damages in an amount equivalent to 125% of the Federal Poverty Guideline for a household size of one for the period from January 1, 2022 to the date on which judgment issues, less any income earned by Ms. Alomía during that period;

D. A declaration that Ms. Alomía is entitled to continued receipt of financial support from Mr. Shaffer in the amount of 125% the Federal Poverty

|  |  |  |
|---|---|---|
| 1 |  | Guidelines for Ms. Alomía's household size, less actual income, until the |
| 2 |  | occurrence of one of the Terminating Events. |
| 3 | E. | An order of specific performance, requiring Mr. Shaffer to make monthly |
| 4 |  | payments to Ms. Alomía for the amount set forth in Paragraph D above, |
| 5 |  | until such time as a Terminating Event occurs, and that such payments |
| 6 |  | shall be completed no later than the fifth calendar day of each month to the |
| 7 |  | client trust account of Ms. Alomía's undersigned attorney; |
| 8 | F. | An award of all Ms. Alomía's attorney fees; |
| 9 | G. | An award of all Ms. Alomía's costs; |
| 10 | H. | The right to amend this complaint to conform to the evidence presented at |
| 11 |  | trial; and |
| 12 | I. | Such other and further relief in Ms. Alomía's favor as the Court may deem |
| 13 |  | just and equitable under the circumstances. |

[The remainder of this page is left blank]

1  DATED: January 13, 2022,

2  By: <u>Adam Samuel Greenberg</u>  By: <u>/s/ Greg McLawsen</u>
   Adam Samuel Greenberg          Greg McLawsen
3  SBA 210113                     Washington State Bar #41870
                                  *Pro hac vice application impending*
4  Greenberg Visa Law
   201 Penn. Ctr. Blvd., Suite 400  Sound Immigration
5  Pittsburgh, PN 15235           113 Cherry St. ECM# 45921
                                  Seattle, WA 98104-2205
6  (412) 376-7302
   adam@asgvisalaw.com             (855) 809-5115
7                                  greg@soundimmigration.com

*Attorneys for Plaintiff Marlene Alomía*